UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                    CRIMINAL NO. 3:08-CR-141-DPJ-LRA

ANTONIO TURNER

ORDER

Defendant Antonio Turner asks the Court to modify his sentence under 18 U.S.C.

§ 3582(c)(1)(A).  Mot. [297].  For the following reasons, Turner's motion is denied without

prejudice.

I.      Facts and Procedural History

On September 10, 2008, a federal grand jury charged Turner in a five-count indictment

with robbery, carjacking, and related firearm charges arising from events that took place in July

2008, in Hinds County, Mississippi.  According to the Indictment, Turner—a convicted felon—

robbed Mississippi Title & Payday Loans at gunpoint.  Later that day, he shot Jackson Police

Officer Dewayne Collier multiple times before pulling Collier from his patrol car and leaving

him for dead as Turner drove off in the stolen vehicle.  Thankfully, Collier survived, but he

sustained life-altering injuries.

Once in custody, Turner confessed to committing the offenses, and forensic evidence

linked him to the shooting.  Turner later recanted his confession and proceeded to trial.  The jury

convicted him on three of the five counts but was unable to reach a verdict on the remaining two

charges related to the shooting and carjacking.  In the retrial on the two outstanding charges, the

jury convicted Turner on both counts.

On November 12, 2010, the Court sentenced Turner to a guideline sentence totaling 1,000 months' imprisonment; the Government sought a life sentence. The sentence imposed broke down as follows:

Count 1 (robbery) = 196 months;

Count 2 (brandishing a firearm during the robbery charged in Count 1) = 84 months;

Count 3 (carjacking) = 300 months;

Count 4 (discharging a firearm during the carjacking charged in Count 3) = 300 months;

Count 5 (felon in possession of a firearm) = 120 months.

All sentences ran consecutive to all other sentences and consecutive to Turner's undischarged term of imprisonment in state court.

Turner's conviction and sentence were affirmed on appeal, and the Supreme Court denied certiorari. He now asks the Court to reduce his sentence from 1,000 months to 204 months.

II.    Analysis

Turner seeks a modification of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The Government does not dispute that Turner exhausted as required by the statute. So, the question before the Court is whether, "considering the factors set forth in [§] 3553(a),"

"extraordinary and compelling reasons warrant" a reduction in Turner's sentence, "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Looking to those policy statements, § 1B1.13 "essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety of any other person or to the community.'"  *United States v. Dunlap*, No. 1:02-CR-165, 2020 WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020) (quoting U.S.S.G. § 1B1.13(2)).  The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a sentence modification.  Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness[.]
>
> (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)  Age of the Defendant—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C)  Family Circumstances—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D)  Other reasons—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason

other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1.

The extent to which § 1B1.13 and Application Note 1 apply remains fuzzy after the First Step Act.  Of late, the Fifth Circuit has stated that "[t]hough *not dispositive*, we are guided in our analysis by the commentary for U.S. Sentencing Guidelines § 1B1.13."  *United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) (citing *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020)); *see also United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines . . . § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." (citing *Rivas*, 2020 WL 6437288, at *2)).

Even with that guidance, Turner's motion raises two issues with respect to § 1B1.13 that have not yet been decided in binding authority:  (1) whether the Court has authority to grant relief based on other extraordinary and compelling reasons not listed in Application Note 1 and (2) whether two post-sentencing changes of law create extraordinary and compelling reasons to reduce his sentence.  As discussed herein, even assuming the Court had discretion to grant the relief Turner seeks, it would not do so at this time.

A.      Application Note 1

Turner acknowledges that subparts (A) through (C) to Application Note 1 do not apply and therefore seeks relief under the catchall found in subpart (D).  As written, subpart (D) allows the Director of the Bureau of Prisons to find "extraordinary and compelling reasons" for a sentence modification other than those listed in subparts (A) through (C).  *Id.*  No such finding has been made as to Turner, and as of now, the Fifth Circuit has recognized but "opt[ed] not to

4

weigh in on the split of authority as to whether th[e] catch-all provision delegates only to the Bureau of Prisons—and not the courts—the task of identifying 'other reasons' justifying [a sentence modification.]" *Thompson*, 984 F.3d at 433 n.4. Thus, it is unclear whether the Court may grant the relief Turner seeks.

B.      Post-Sentencing Changes to Sentencing Laws

The other open question Turner's motion implicates is whether two post-sentencing changes in the law create extraordinary and compelling reasons to modify his sentence. Turner correctly notes in his well-written and reasoned motion that the First Step Act amended 18 U.S.C. § 924(c)(1)(C)(i) in a way that would have reduced his mandatory-minimum consecutive sentence for Count 4 from 25 years to 10 years.

This point requires some background. Turner was convicted and sentenced under Counts 2 and 4 for violating 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii). Those sections have provided at all relevant times:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> . . . .
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). At the time of Turner's offenses, conviction, and sentencing, § 924(c)(1)(C)(i) further provided: "In the case of a second or subsequent conviction under this

subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25

years." 18 U.S.C. § 924(c)(1)(C)(i) (effective Oct. 6, 2006, to Dec. 20, 2018).

Applying those sections together, the Court sentenced Turner under Count 2 to the

statutory minimum 7 years' imprisonment for violating § 924(c)(1)(A)(ii) and under Count 4 to

the enhanced statutory minimum of 25 years for the "second . . . conviction" under

§§ 924(c)(1)(A)(iii) and 924(c)(1)(C)(i). Both sentences ran consecutive to all other others

pursuant to 18 U.S.C. § 924(c)(1)(D)(ii). Thus, even though the crimes charged in Counts 2 and

4 happened the same day, the Court stacked the penalties under § 924(c)(1)(C)(i).

That holding was legally correct. As the Fifth Circuit recently noted:

> At the time, it was common practice to "stack" simultaneous § 924(c)(1) offenses
> by charging one as a first-time offense and all others as successive. In fact, the
> United States Supreme Court endorsed this approach in 1993 when it held that a
> defendant charged simultaneously with multiple § 924(c)(1) offenses was subject
> to the enhanced repeat-offender minimum on all but the first count.

*United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020) (citing *Deal v. United States*, 508 U.S.

129, 131–33 (1993))).

But that changed in 2018 when, as part of the First Step Act, Congress amended

§ 924(c)(1)(C) to eliminate stacking. After that amendment, the 25-year mandatory minimum

applies only "[i]n the case of a violation of [§ 924(c)] that occurs after a prior conviction under

this subsection has become final." 18 U.S.C. § 924(c)(1)(C). So, under the amended statute,

Turner would still face 7 years consecutive for Count 2, but his Count 4 sentence would be 10

years consecutive rather than 25, a difference of 180 months.

As Turner recognizes, Congress chose not to make this amendment retroactive. Indeed

the First Step Act specified that the amendments to § 924(c) "shall apply to any offense that was

committed before the date of enactment of th[e First Step] Act, if a sentence for the offense has

not been imposed as of such date of enactment."  First Step Act, tit. IV, sec. 403, Pub. L. No.

115-391, 132 Stat. 5194, 5222 (Dec. 21, 2018).

To overcome that hurdle, Turner argues that the amendment created an "enormous

sentencing disparity" between those convicted of multiple contemporaneous § 924(c) charges

today and those convicted of similar charges before the First Step Act, and that disparity

"constitutes an 'extraordinary and compelling reason'" for a sentence modification.  Def.'s Mot.

[297] at 13 (quoting *United States v. Jones*, No. 94-CR-20079, 2020 WL 5359636, at *7 (N.D.

Cal. Aug. 27, 2020)).

Turner is not the first to assert this argument, and the results have been mixed.  *Compare*

*United States v. Fowler*, No. 3:99-CR-83-S, 2020 WL 7408239, at *4 (N.D. Tex. Nov. 17, 2020)

(collecting cases and holding that granting compassionate release based on "a post-conviction,

non-retroactive change in law solely . . . would render every inmate who might receive a reduced

sentence today eligible for compassionate release" (punctuation altered)) *with United States v.*

*Sterling*, No. 2:05-CR-20061, 2021 WL 197008, at *5–6 (W.D. La. Jan. 19, 2021) (finding court

can consider anti-stacking amendment when considering reasons for compassionate release).

The Fifth Circuit has not yet considered this point.  Thus, there remains an open question

whether the amendment to § 924(c) constitutes an extraordinary and compelling reason for

modification, assuming the Court may independently modify the sentence for Count 4 based on

reasons other than those stated in Application Note 1, subparts (A) through (C).

As for Turner's sentences for Counts 1, 3, and 5, he says the Court should reduce them

based on the Supreme Court's subsequent holding in *Dean v. United States*, 137 S. Ct. 1170

(2017).  In that case, the defendant faced two robbery convictions that were the predicate

offenses for his two convictions under § 924(c) for using or carrying a firearm during crimes of

violence.  *Id.* at 1174.  Like Turner, Dean faced a substantial mandatory minimum sentence—in his case 30 years.  *Id.* at 1175.  The sentencing court believed 30 years was long enough but incorrectly concluded that § 924(c) left no discretion to reduce the sentences for the predicate crimes.  *Id.*  The court therefore rejected Dean's plea that he receive one-day sentences for the two predicate convictions.  *Id.*  The Supreme Court reversed, noting that district courts possess discretion to consider whether the ultimate sentence is sufficient but not greater than necessary to accomplish the goals of the sentencing statutes.  *Id.* at 1176–77.

Turner argues that had the First Step Act been enacted and *Dean* decided before he was sentenced, this Court could have sentenced him to one-day sentences for Counts 1, 3, and 5, along with a combined mandatory consecutive 17-year sentence for Counts 2 and 4.  *See* Def.'s Mem. [297] at 22.  He further claims that this creates a sentencing disparity between himself and those sentenced under § 924(c) after those developments, which in turn provides extraordinary and compelling reasons to reduce his sentence.  *Id.*

The first problem with Turner's argument is that the Court would never have sentenced him to one day each for Counts 1, 3, and 5 because even the then-existing mandatory minimums for Counts 2 and 4 were not sufficient to satisfy the sentencing statutes.  Counts 1, 3, and 5 were grouped for guideline purposes and carried a guideline range of 360 to 660 months; the guideline would have topped out at life in prison but for the statutory maximums.  For reasons discussed below, the Court sentenced Turner to a collective 576 months as to Counts 1, 3, and 5, which was near the top of the guideline range and equaled the statutory maximums for Counts 3 and 5. So even if *Dean* had been decided, it would not have impacted the sentence.

That still leaves the question whether the anti-stacking amendment to § 924(c) can itself constitute an extraordinary and compelling reason to modify Turner's sentence.  Chief Judge Lee

Rosenthal of the Southern District of Texas recently faced the same question under similar circumstances in *United States v. Hood*, No. H-99-259, 2020 WL 5539878, at *10–11 (S.D. Tex. Sept. 15, 2020) (Rosenthal, C.J.).  While noting the split authority on this point, she declined to pick a side and instead crafted a pragmatic solution that this Court will follow.  Like Turner, the defendants in *Hood* would still have faced substantial sentences even if entitled to the relief they sought.  The court therefore concluded that this fact, "combined with the divided and evolving legal landscape—which includes almost no input from the appellate courts or from the [Sentencing] Commission itself—support[ed] denying [the defendants'] sentence-reduction motions for now, without prejudice."  *Id.*  In other words, there was no need to make an immediate decision because the law would likely settle before it could benefit the defendants.

The same is true here.  As noted, the Court is not persuaded to reduce the sentences for Counts 1, 3, and 5 based on *Dean*.  And even if it reduced Turner's sentence under § 3582(c)(1)(A) by the full 180 months to account for the amendment to § 924(c), he would still have over 40 years to serve.  "The record presents an ample basis to find that it would be prudent to rule when [Turner] might benefit from a sentence reduction, and when the applicable law may also be clearer."  *Hood*, 2020 WL 5539878, at *12.

Nor would modifying of Turner's sentence at this juncture be appropriate considering the § 3553(a) factors.  Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[;]

. . . .

(5) any pertinent policy statement . . . [;]

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As an initial point, Turner appears to have taken full advantage of the educational and other opportunities available through the Bureau of Prisons and has worked to better himself and others during his incarceration. He should be commended for those efforts—especially given the length of his sentence—and encouraged to continue.

While those efforts are relevant to the sentencing factors, they do not yet outweigh the Court's reasons for the sentence it imposed. Those reasons were stated from the bench and remain pertinent:

THE COURT: All right. Technically speaking, a life sentence would not be a guideline sentence. The sentencing range, however, is so substantial that the practical reality is that a sentence within the guidelines would, in all likelihood, result in the defendant's incarceration for the rest of his natural life. The defendant indicates that only God knows what . . . happened that day, but it's not my position at this time to determine whether or not he was guilty of the offenses for which he has been charged. A jury has made that determination.

I did not reach the decision that I'm about to make lightly. Only after careful consideration of each 3553 factor did I conclude that a sentence at the high end of

the range is appropriate, a sentence that is substantial, a sentence that will likely result in the defendant spending the rest of his life in prison.

I will say that I've listened to Ms. Nester's objections to the presentence report. I have carefully considered them. I have attempted to arrive at the correct guideline calculation. But I believe that the sentence I'm going to impose is appropriate under the statute. And even if the guideline sentence came out differently, it would not affect my ruling.

All right. First, and I will say, because of the breadth of the guideline range, I'm required to make detailed findings as to why I have arrived at my sentence. So this is obviously more than you would have in the normal case. But the first thing I have to do is look at the nature of the circumstances of the offense and the history and characteristics of the defendant, starting with the offense.

We're not dealing with a single criminal act. The defendant was convicted of the armed robbery of the Mississippi Title & Payday Loans. After that conviction, he admitted committing that crime. Whether you believe his testimony at trial that he waited in the car or was one of the armed robbers seen in the video at the Payday Loan, he admitted that he was to share in the proceeds.

That said, the defendant's [original] confession included a detailed and accurate description of what happened inside the business, which indicates that he actually went into the store with the gun. Although the person in the video wears a mask, he was holding defendant's gun by the defendant's own admission. He was wearing clothing linked to the defendant and had the same body type as the defendant. By defendant's own admission, the gun used in the Payday Loan and used to shoot Officer Dewayne Collier was his. And, of course, he was a convicted felon at the time and could not lawfully possess that gun.

The defendant and Cornelius Black went into Payday Loan with loaded guns at a time when the business was occupied by employees, customers, and at least one child. We heard testimony today and previously through Mr. Honeycutt with respect to the injuries he sustained during that robbery. And even though I think that the record is fairly clear that the individual wearing the black shirt was the one who forced Honeycutt to the ground, the defendant would still be responsible for the acts of those co-defendants.

From there, the defendant and Cornelius Black proceeded to commit the armed robbery of the [Popeye's] that same morning.[1] These offenses alone reflect a disrespect for the law and for others and would justify a substantial sentence. But unfortunately the story does not end there.

. . . .

---

[1] Turner was not federally charged with that offense.

All right.  The worst offense, of course, occurred when Officer Dewayne Collier was shot multiple times at close range, was dragged from his patrol car and left for dead in the middle of the road as defendant took the patrol car and fled in it. As a result of the defendant's acts, Officer Dewayne Collier is now permanently disabled, and we've heard today the impact that that has had on him and his family.  I'll simply say that the nature and circumstances of the offense are sufficient for a term of incarceration that will in all likelihood be for the rest of the defendant's life.

As for the history and characteristics of the defendant, while he has never been charged with shooting anyone before, he began his criminal conduct at an early age.  At age 12, he began using drugs.  And although he has been in court-ordered drug treatment programs, they did not work and he was using drugs on a daily basis at the time of these offenses.

By the age of 16, the defendant was under the authority of the youth court.  In 2003, he was convicted of business burglary in Rankin County.  When apprehended for that offense, he resisted and was convicted of disobeying a police officer and resisting arrest.  He, in turn, was released on parole but later held in contempt for failing to honor the terms of the court.

In November of 2003 while those charges were pending, he committed another felony offense when he broke into two cars to steal their contents.  In January of 2005, he committed additional felony offenses and was convicted of possession of marijuana and cocaine.  The defendant was still on a combination of probation and post-release supervision when in July of 2008 he committed these offenses.

I note that he dropped out of high school but while incarcerated he earned his GED as ordered by the court.  There is no real work history reported here and the longest period of continuous employment appears to be three to four months in 2008.

Ms. Nester touched on it, and I'm sure drugs had a lot to do with it and it's hard to pinpoint why someone will choose the path that they choose, but the defendant essentially went right back to using drugs and robbing people after his earlier terms of incarceration.  His family members have submitted letters, and they are naturally concerned for him and they believe that he can be rehabilitated.  But I see little indication in the record that that is the case.

The sentence must also reflect the seriousness of the offense.  And it does not get any more serious than what happened to Officer Collier on July 7, 2008.  The sentence must . . . promote respect for the law and provide just punishment for the offense.  The defendant has never really shown respect for the law. His prior convictions, sentencings, counseling and post-release supervision did not prevent him from returning to a life of crime.  In July 2008 he was using drugs daily, carrying a gun and robbing people.  Of course, shooting a police officer and stealing a patrol car are perhaps the most obvious signs of disrespect for the law.

The sentence has to afford adequate deterrence to criminal conduct.  There are certain lines in society that you simply do not cross.  Shooting a police officer is one of them.  The sentence must be substantial and must send the message that shooting an officer carries grave consequences.  I also have to consider whether the public needs to be protected from further crimes of the defendant.  And as I said, the defendant has shown that incarceration and supervised release will not stop him from committing violent crimes.

I'll note for the record that I have considered the kinds of sentences available, whether there are unwarranted sentencing disparities.  I don't find that to be the case, although there was an argument with respect to Cornelius Black.  I will note that not only did he cooperate but there has never been any indication that he was in any way involved in the shooting of Officer Collier.  It's a dramatic distinction between this case and that.

I've also, of course, considered the advisory sentencing guidelines and pertinent policy statements.  Factors that I have mentioned are the most significant in my opinion.

Tr. [205] 49–55.  Accordingly, the § 3553(a) factors do not support a sentence modification at this time.

III.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Turner's Motion [297] is denied without prejudice to later assertion if circumstances change.

**SO ORDERED AND ADJUDGED** this the 22nd day of February, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE